# HENRY Y. ATTRILL *v.* THE ROCKAWAY BEACH IMPROVEMENT COMPANY (LIMITED).*

*Removal, on motion of the attorney-general, of the receiver of a corporation — to what receivers chapters* 537 *of* 1880 *and* 639 *of* 1881 *apply — to whom notice of such a motion must be given.*

The proceedings authorized by chapter 537 of 1880, as amended by chapter 639 of 1881, for the removal of receivers of insolvent corporations, only apply to such receivers as are by statute required to make and file reports of their proceedings at certain definite and prescribed times.

When any proceeding thereunder is instituted by the attorney-general it must be shown that the party of whose property a receiver has been appointed is a corporation and that it is insolvent.

Where an action has been brought by a stockholder and creditor to close up the business of a corporation, and a receiver of its property has, with the consent of all its directors and stockholders and of many of its creditors, been appointed, notice of a motion by the attorney-general under the said acts for the removal of the said receiver should be served upon all the parties who have appeared in the action, and it is improper to remove such a receiver and appoint another in his place when notice of the motion has been served upon the receiver alone.

APPEAL from an order made at Special Term removing Mr. John A. Rice from his position as receiver and appointing James W. Husted a receiver in his place.

Whether the defendant, the Rockaway Beach Improvement Company (limited), is a corporation or a parnership is not distinctly shown. In July or August, 1880, the plaintiff, who is alleged to be the largest stockholder of the defendant, commenced this action. It was brought in behalf of the plaintiff and all other stockholders who might come in, etc. The complaint is not in the present papers; but its object seems to have been to close up the business of the defendant, which was probably in an embarrassed condition. In this action Mr. John A. Rice was appointed receiver in the early part of August, 1880. This appointment was made on a petition in writing, signed by a majority of the directors, owning more than nine-tenths of the stock and a large majority of the unsecured debts. The complaint alleged that the capital was $700,000, and that it

---

*See *ante,* page 376.

had all been expended, and that mortgage bonds to the amount of $700,000 had been issued. The papers and proceedings in the case were, in September, 1880, presented at a meeting of the board of directors, at which every director was present and voted, and were unanimously approved. They were, in the same month, laid before a stockholders' meeting, at which every share of stock was represented and voted on by its owner in person, and were unanimously approved. About two-thirds of the unsecured debts were held by stockholders who were present and voted. The trustee of the first mortgage bonds was present and voted as director and stockholder.

It would seem, therefore, that the directors, the stockholders, the trustee of the mortgage and a large majority of the unsecured debts approved of the appointment of Mr. Rice as receiver.

In May, 1881, the attorney-general (who was not a party to this action) applied to the Supreme Court for the removal of Mr. Rice and the appointment of another receiver. The facts alleged as a ground for this proceeding are, that the receiver was required to give bonds only in the sum of $25,000 ; that the receiver had taken no action to secure the completion of the hotel, or to convert the property into cash ; that the plaintiff and others had formed a scheme for reorganization with intent to defeat smaller stockholders and creditors, and that the receiver was aiding or abetting ; that the receiver had permitted creditors to take away large quantities of property ; that he had paid out certificates to parties claiming to have been servants, and who in fact had rendered no services; that creditors and others could get no information from the receiver.

On this application an order to show cause was granted. On the return of the order, the allegations being denied, a reference was ordered to pass the receiver's accounts, and to summon and examine witnesses concerning the same and to report. The referee reported the evidence and the following facts and conclusions :

1st. That the receiver has taken over $18,000 commissions; that this was at the rate of five per cent, and that as this was the highest rate it should receive the sanction of the court before being allowed.

2d. That the charge for legal expenses was proper.

3d. That the receiver had paid himself and his book-keeper in certificates at a discount of $2,770, and that this ought not to be allowed.

4th. That the receiver borrowed money of one Wheeler on certificates as collateral; that the amount of the certificates over the loan was $3,320; that while these certificates were outstanding the receiver was liable, and that said amount should not be allowed on this accounting.

5th. That the receiver had issued certificates to himself for salary on his old contract to the amount of over $13,000; that he was under the impression that he had the right so to do, but on advice of counsel he had canceled such certificates.

In other respects the referee reported that the receiver's accounts were proper and should be allowed. None, therefore, of the charges made by the attorney-general were sustained; and the grounds on which the attorney general based his petition were found either to be incorrect or immaterial, as may be inferred from the silence of the report. On the report of the referee and the evidence taken before him, and on hearing the attorney-general for the motion, and the counsel for the receiver opposed, it was ordered that the receiver, John A. Rice, be removed, and James W. Husted be appointed in his place on giving a bond in the sum of $50,000.

From this order the receiver Rice appeals.

*Ashley & Keener*, for John A. Rice, receiver, appellant.

*Hamilton Ward*, attorney-general, etc., opposed.

LEARNED, P. J.:

One of the most important questions on this appeal is as to the right of the attorney-general to apply to remove a receiver in an action to which he is not a party, and another is as to his right to do this without notice to any of the parties to the action.

The only right which he has arises under chapter 537, Laws of 1880. For it is plain that, without some special legislation, the attorney-general would have no right to interfere in a private action.

The first section of that act requires all receivers of insolvent corporations, " *who are now required by law to make and file reports of their proceedings*," to serve a copy on the attorney-general. This section was amended by chapter 639, Laws of 1881, by requiring receivers of banks to report to the superintendent of the banking

department. Section 2 gives power to the attorney-general, in case of the neglect of a receiver for thirty days to file his report, to move to compel him to do so, or to remove him. Section 3 gives the attorney-general power, if he shall believe the interests of stockholders, etc., will be subserved, to move in the Supreme Court "for an order removing such receiver or to compel him to account," etc.

Now it is urged by the appellant that the right given to the attorney-general by this third section is limited to such receivers as are by law (that is by statute) required to file reports of their proceeding. The respondent insists that this is a general authority in the case of all receivers of insolvent corporations.

Receivers of corporations appointed after return of execution unsatisfied have the same duties as receivers in cases of voluntary dissolution. (Laws of 1852, chap. 71, § 1.) The same is true of receivers of banks and insurance companies. They are required to file written statements quarterly. (2 R. S., m. p. 464, § 51 [42]; see, also, Laws 1867, chap. 709, § 2.) Receivers in cases of voluntary dissolution are under the same duties as trustees of insolvent debtors. (2 R. S., m. p. 470, § 85 [74].) And such trustees are required within ten days after making a dividend to file "an account in writing of all their proceedings." (2 R. S., m. p. 48, § 50 [45].) It is claimed by the appellant, and the contrary is not urged by the respondent, that no other receivers of insolvent corporations than those specified above are by statute required to file accounts of their proceedings. And it is evident that the receivers specified above are required to file accounts ten days after making a dividend. In the present case no dividend has been made.

It is plain that the first and second sections of the act under consideration refer to some definite time at which it is supposed some receivers of insolvent corporations are by law required to file accounts of their proceedings. Because the second section speaks of thirty days after the time, thus indicating that some positive regulation is referred to; and not any general principle by which courts may always call on receivers to report. Undoubtedly a court which had appointed a receiver might order him to report his proceedings. But that would not be a case of receivers "now required by law." And further, there is no evidence that in this present

case the court had ever ordered Mr. Rice to report his proceedings. Coming then to the third section it would be a forced construction to separate it in its application from the first and second. It speaks of "such insolvent corporations" and "such receivers" with evident reference to the receiver mentioned in section 1, viz.: a receiver of an insolvent corporation who is by law required to make and file reports of his proceedings. The section does not speak of *any* insolvent corporation or of *any* receiver, as it would have done if the authority given were general and applied to all receivers of all insolvent corporations.

We have then the difficulty in the present case that it does not appear that Mr. Rice was such a receiver of an insolvent corporation as was then required by law to file reports of his proceedings, and therefore that he was not such a receiver as could be removed upon the interference of the attorney-general.

Furthermore, a careful examination of the papers fails to show that the Rockaway Beach Improvement Company (limited) was a corporation. This is not alleged in the moving affidavits, and is not shown in the testimony. Nor is it alleged that the defendant is insolvent. It is alleged in one of the opposing affidavits that, when Mr. Rice was appointed receiver, the company was embarrassed and in imminent danger of insolvency. But it does not appear that the company has not property enough to pay its debts. Nor is it shown that Mr. Rice was appointed upon the ground of the insolvency of the company. The complaint is not before us to show the grounds of action. An action for a voluntary dissolution of the company, supposing it to be a corporation, might be brought, even if it were not insolvent. (2 R. S., m. p. 467, § 69 [58].) And it is only in case of insolvency that the attorney-general can interfere. There seem, then, to be several respects in which the attorney-general has failed to make a case justifying his interference.

There is another consideration: Mr. Rice was appointed in an action in which Mr. Attrill was plaintiff and the company defendant. The company appeared in the action. The appointment of Mr. Rice was made with the consent of all the directors and stockholders and of many creditors. The motion of the attorney-general was made on notice to no one but Mr. Rice, the receiver. This seems to us improper. The ordinary rules of practice entitle par-

ties who have appeared to notice of motion in the cause. Especially when a stranger, like the attorney-general, claiming authority under a special act, interferes and attempts to remove a receiver, all parties to the action should have notice. It is said by the respondent that the statute says that the attorney-general may make a motion, and does not expressly require notice. Nor does it expressly require that he should make a motion on written papers. Such things are matters of settled practice. He gave notice to the receiver, but the parties to the action were interested and were entitled to be heard. Any other rule would open the door to collusion. The receiver, already appointed with the consent of all parties, might make no opposition to the motion, and thus the rights of those who were interested might be entirely disregarded. (Code of Civil Pro., §§ 714, 1810.) And generally the stockholders of a company and its creditors will look out as carefully for their interests as a public officer, who has heavy and laborious duties of his own. Certainly they ought to have an opportunity to be heard on the removal of one receiver and the appointment of another. Those who were thus interested could at any time have come into court if they had thought that their interests were in danger or that Mr. Rice was conducting the business improperly. And we think it would be a dangerous principle that the attorney-general, even in a case within the statute, could make a motion like this without notice to the parties.

In this view of the matter we think it best to say nothing on the question as to the conduct of the receiver, Mr. Rice.

The order is reversed, with ten dollars costs and printing disbursements.

BOARDMAN, J.:

I concur in the conclusion to which my brother LEARNED has come, for the following reasons:

1. That the case does not come within chapter 537, Laws of 1880.

2. That the attorney-general ought not to intervene except upon notice to all parties to the action who had appeared, if not to all parties to the action who would have a right to appear and oppose his motion.

3. That there was not satisfactory evidence that the interests of

the stockholders and creditors of the defendant were suffering or in danger to justify the interference of the attorney-general.

4. That such interference ought not to be indulged when stockholders and creditors are substantially unanimous in favor of the existing state of affairs.

5. That the grounds of interference, as alleged by the attorney-general, were not sustained by the proofs.

I therefore concur in reversing the order.

Present — LEARNED, P. J., and BOARDMAN, J.; BOCKES, J., not acting.

Order reversed, with ten dollars costs and printing disbursements, and motion of attorney-general denied, with ten dollars costs.